**Affirmed and Opinion Filed August 21, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01059-CV

### CRYSTAL ANN HARRIS, Appellant
### V.
### VIRGINIA VANEGAS, Appellee

**On Appeal from the 254th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-11-13821**

## MEMORANDUM OPINION

Before Justices Moseley, O'Neill, and FitzGerald
Opinion by Justice FitzGerald

The trial court appointed Virgina Vanegas ("Grandmother") sole managing conservator of D.L. and C.V. (together, "Children") and appointed Crystal Harris ("Mother") possessory conservator. In a single issue, Mother asserts the trial court erred in awarding managing conservatorship to Grandmother. We affirm the trial court's judgment.

## BACKGROUND

The Children, born in 2000 and 2001, have resided with Grandmother since birth. Grandmother's son, the father of the Children, has been incarcerated since 2008. Although father and Mother lived with Grandmother many years ago, both moved out and voluntarily surrendered possession of the Children to Grandmother.

In 2008, pursuant to a Child Protective Services ("CPS") investigation, Mother signed an affidavit of relinquishment placing the Children in the care of Grandmother. Mother revoked the

affidavit in 2011. The revocation prompted Grandmother's filing of the petition seeking a court order awarding her managing conservatorship of the Children.

The trial court concluded Grandmother had standing to bring suit under the family code. The trial court signed temporary orders appointing Grandmother temporary sole managing conservator. Mother was also ordered to pay monthly child support to Grandmother in the amount of $222 per month. Mother failed to make any of the payments as ordered. The case was tried to the bench, and the court awarded managing conservatorship to Grandmother and possessory conservatorship to Mother. The court also awarded judgment for past due child support to Grandmother in the amount of $3,330, and ordered that Mother make monthly child support payments in the amount of $210.

**DISCUSSION**

*Standing*

In the first part of her sole issue, Mother argues the trial court erred in determining Grandmother had standing to bring this action. We disagree.

Standing is implicit in the concept of subject-matter jurisdiction, and it is a threshold issue in a child custody proceeding.[1] Whether a party has standing to pursue a cause of action is a question of law that we review de novo.[2] When, as here, the trial court does not make separate findings of fact and conclusions of law, we imply the findings necessary to support the judgment.[3] When standing to bring a particular type of lawsuit has been conferred by statute, we use that statutory framework to analyze whether the petition has been filed by a proper party.[4]

---

[1] *See Tex. Ass'n of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440, 443–44 (Tex. 1993); *In re SSJ–J*, 153 S.W.3d 132, 134 (Tex. App.—San Antonio 2004, no pet.).

[2] *In re SSJ–J*, 153 S.W.3d at 134.

[3] *In re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990)).

[4] *See Atty. Gen. of Tex. v. Crawford,* 322 S.W.3d 858, 862 (Tex. App.—Houston [1st Dist.] 2010, pet. denied); *In re N.L.D.*, 344 S.W.3d 33, 37 (Tex. App.—Texarkana 2011, no pet.).

The family code identifies those who have standing to file an original suit, and includes persons who have had possession for at least six months and a person designated as managing conservator in an affidavit of relinquishment.[5] Specifically, the statute provides:

> (a) An original suit may be filed at any time by . . .
>
> (9) a person, other than a foster parent, who has had actual care, control, and possession of the child for at least six months ending not more than 90 days preceding the date of the filing of the petition . . .
>
> (10) a person designated as the managing conservator in a revoked or unrevoked affidavit of relinquishment . . . .[6]

The record reflects that Grandmother has had actual care, control and possession of the Children for the entirety of their lives. Although the Children occasionally visit Mother, the Children reside with Grandmother, and Grandmother is and always has been responsible for providing their care.

Mother's affidavit of relinquishment, dated April 1, 2008, was admitted into evidence at trial. The affidavit reflects that Grandmother has the right to possession of the Children, to direct their moral and religious training, and to designate their residence. Grandmother is also charged with the duty of care, control, discipline, and protection, has the right to consent to dental and medical care, and the right to access state and federal social services for the Children. The affidavit further grants Grandmother the right to make educational decisions and to enroll the Children in day care. These are duties of a managing conservator.[7] Therefore, the record reflects that Grandmother has had actual care, control, and possession of the Children for the statutorily prescribed period of time and Grandmother was named the managing conservator in the affidavit

---

[5] TEX. FAM. CODE ANN. §102.003(a) (9),(10) (West 2014).

[6] *Id.*

[7] TEX. FAM. CODE ANN. §102.003(a) (9),(10) (West 2014).

of relinquishment. Consequently, the trial court did not err in concluding that Grandmother has standing to bring suit.[8] The first part of Mother's issue is overruled.

In the remaining portion of her sole issue, Mother argues the trial court erred by appointing Grandmother managing conservator. Mother contends there was no evidence or insufficient evidence to rebut the presumption in favor of parental conservatorship set forth in the family code.[9]

We review a trial court's determination of conservatorship for an abuse of discretion.[10] Under the abuse of discretion standard, a challenge to the legal and factual sufficiency of the evidence is not an independent ground of error, but is merely a factor in assessing whether the trial court abused its discretion.[11] In determining a legal insufficiency issue, we are to consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary.[12] Anything more than a scintilla of evidence is legally sufficient to support the finding.[13] More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.[14] To determine whether the evidence is factually insufficient, we must consider, weigh, and examine all of the evidence that supports or contradicts the fact-finder's determination.[15] We may set aside a judgment only if the evidence supporting it is so contrary to the overwhelming weight

---

[8] *Id.*

[9] *See* TEX. FAM. CODE ANN. § 153.131 (Tex. 2014).

[10] *Gillespie v. Gillespi*e, 644 S.W.2d 449, 451 (Tex. 1982)

[11] *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991).

[12] *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001).

[13] *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996).

[14] *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 77 S.W.3d 253, 262 (Tex. 2002).

[15] *See Mauldin v. Clements*, 428 S.W.3d 247, 268 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

of the evidence as to be clearly wrong or manifestly unjust.[16] When conducting a factual sufficiency review, we do not substitute our judgment for that of the fact-finder.[17] The fact-finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony.[18] Thus, in addressing the overlapping abuse of discretion/sufficiency standards of review, we first determine whether the trial court had sufficient information to exercise its discretion, then we determine whether the court abused its discretion.[19]

If a non-parent and a parent are both seeking managing conservatorship of a child, the family code prohibits a court from appointing the non-parent "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development."[20] This creates a presumption in favor of parental custody.[21]

This parental presumption, however, can be rebutted upon a showing that the parent voluntarily surrendered possession of the child. To this end, the family code provides:

> The presumption that a parent should be appointed or retained as managing conservator of the child is rebutted if the court finds that:
>
> (1) the parent has voluntarily relinquished actual care, control, and possession of the child to a non-parent . . . for a period of a year or more, a portion of which was within 90 days preceding the date of the intervention in or filing of the suit; and

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *See Chavez v. Chavez*, 148 S.W.3d 449, 456 (Tex. App.—El Paso 2004, no pet.).

[20] TEX. FAM. CODE ANN. § 153.131.

[21] *See Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990).

(2) the appointment of the nonparent or agency as managing conservator is in the best interest of the child.[22]

The parental presumption was rebutted here. Exhibit 2, the affidavit of relinquishment, shows that Mother voluntarily relinquished control of the Children to Grandmother in 2008. The record reflects that Children have resided with Grandmother since that time. The trial court's finding that awarding Grandmother managing conservatorship is in the best interest of the Children is implied.[23] The best interest of the child is always the primary consideration in determining issues of conservatorship, access, and possession.[24] Because the trial court is in a position to analyze the facts with regard to issues of conservatorship, control, possession, child support, and visitation, the trial court is given "wide latitude in determining the best interests of a minor child."[25]

In determining the best interest of a child, courts consider the following non-exhaustive factors: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent, or potential conservator, that may indicate that the existing relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent or potential conservator.[26]

---

[22] TEX. FAM. CODE ANN. § 153.373 (West 2014).

[23] *See S.M.D.*, 329 S.W.3d at 13 (court implies findings in support of judgment).

[24] TEX. FAM. CODE ANN. §153.002 (West 2014).

[25] *Stallworth v. Stallworth*, 201 S.W.3d 338, 347 (Tex. App.—Dallas 2006, no pet.).

[26] *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

Grandmother stated that she has raised and cared for the Children since birth, and that Mother has been in and out of jail. Grandmother is concerned that Mother has no job and offers no stability or supervision of the Children. According to Grandmother, the Children complain that Mother yells and curses at them, and have expressed a desire to continue to reside with Grandmother. Mother is residing with a boyfriend in San Antonio, and Grandmother and the Children reside in Dallas. The man with whom Mother resides has a prior conviction for family violence. Grandmother expressed concern to Mother that she was allowing the boyfriend to discipline the Children when they visited.

Grandmother testified that Mother resided at her home on and off throughout the years. Mother moved out in 2001, four months after the first of the Children at issue here was born. Mother returned again for a short period and then left again in 2005. Mother has been in and out of several relationships. At one point when Mother left Grandmother's home, Mother got married. She is no longer married to that man, but instead resides with a boyfriend in San Antonio. Mother has had seven children with four fathers. Grandmother testified without objection that Mother has had her rights terminated as to other children. She did not specify which ones or how many.

Mother signed the affidavit of relinquishment through ("CPS") after she had her fourth child. Although the details were not developed at trial, the affidavit of relinquishment resulted from a CPS investigation involving the Children in which CPS wanted to terminate Mother's parental rights. Mother was not following CPS directives and would not communicate with them. CPS could not get Mother to follow through on classes or do anything. Although the affidavit relinquished possession of three children, in 2010, Grandmother contacted CPS to let them know

that Mother wanted one child back. At that time, Mother did not say that she wanted the Children at issue here.

Grandmother filed this suit in 2011 when Mother revoked the affidavit as to the two Children that are the subject of this case. Grandmother was concerned about the Children going to live with Mother because of "the history of drug abuse," and her concerns about Mother's boyfriend and the discipline of the Children. Grandmother testified that the Children are in school in Dallas and are performing well. Because Mother lives in San Antonio, Grandmother is concerned that she will never get to see the Children if they are sent to live with Mother in San Antonio. Grandmother also testified about an incident where Mother was confused about when the court orders indicated Children were supposed to be returned to Grandmother after a visit. Mother sent Grandmother a text saying the Children would not be returned for a few days until after they were due. Grandmother filed a police report, and ultimately incurred a car rental expense and a day off from work to travel to San Antonio to retrieve the Children herself.

Grandmother testified that in 2011, Mother tested positive for drugs, and she has tested positive for drugs before. The record includes a court-ordered drug test, and a report showing a positive result.

Grandmother has the Children involved in sports and scouting. Last year, she enrolled them in dance classes. She keeps their schedules very busy, and she communicates with them about the dangers of becoming involved with drugs. One summer, when the Children visited Mother, Grandmother sent a packet of homework that was to be completed. When the Children returned, the packet was unopened. Since Mother became a part of the Children's lives again in 2009, Grandmother has observed behavior changes in the Children. Grandmother expressed concern that sending the Children to live with Mother for the first time in their lives would be emotionally disruptive to the Children.

Kim Lumpkin, a friend of Grandmother's, testified that she has known Grandmother for about seven years. One of the Children plays with her son, and the child is happy, well-mannered, cared for, and well-adjusted. Lumpkin does not believe it would be in the best interest of the Children to go live with Mother because the home in Dallas with Grandmother is the only home they have ever known, and Mother has been in and out of their lives. Lumpkin has never seen Mother at any of the Children's school functions.

Grandmother's daughter's best friend, Theresa Barrera, also testified. Barrera has spent considerable time with the family. Grandmother is a good parent, and Barrera does not believe it would be in the Children's best interest to live with Mother. The Children have friends and a community that has embraced them in their current location with Grandmother. The Children are happy, well-fed, properly clothed, well-adjusted, and receiving appropriate care from Grandmother.

The Children's aunt, a police officer with the Dallas Police Department, also testified that Grandmother is a good mother to the Children. Grandmother makes sure the Children have appropriate discipline. The Children are doing well in school and are involved in numerous activities. They are happy, and their health is properly cared for. One child has asthma, which is under control. But Mother's boyfriend is a smoker, and the aunt does not believe it would be in the Children's best interest to live with a smoker. The aunt believes that Mother is involved with drugs. She described a text message she once received from Mother in which Mother was asking for drugs. When the aunt returned the text and inquired if Mother realized she was asking for drugs, Mother replied that she let someone use her phone and had not intended to text the aunt. The aunt is also raising one of Mother's biological children. Mother placed the child with aunt when the child was three months old. The aunt testified that it would not be in the Children's best interest to go live with Mother. The Children have been in Dallas their entire life, and are

happy and doing well in school. Moving them to San Antonio would be a huge disruption. The aunt also worries that Mother is still involved with narcotics, and she is concerned about the Children being in "that type of environment."

Mother testified that she has had trouble with drugs in her past and is still undergoing drug counseling twice a week. She acknowledged that she has made a lot of mistakes and bad choices. Mother currently has three children living in her home, and has taken two parenting classes. Mother said that she loves her children. She is in the process of getting a divorce. Mother acknowledged that she has not paid any of the court-ordered child support because "they don't need it." Mother stated that she wants what is best for her children, but she offered no explanation as to why she believes their interest is best served by moving from Dallas to live with her in San Antonio. Mother did not state that she is no longer using drugs, nor was there any testimony or evidence that she is employed. There was also no testimony concerning any plans for feeding, clothing, or educating the Children, or attending to their physical and emotional well-being.

The record reflects that there is sufficient evidence to support the trial court's conclusion that the best interest of the Children would be served by remaining with Grandmother. Therefore, we conclude the trial court did not abuse its discretion by appointing Grandmother managing conservator. Mother's issue is overruled. The trial court's judgment is affirmed.

131059F.P05

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CRYSTAL ANN HARRIS, Appellant

No. 05-13-01059-CV        V.

VIRGINIA VANEGAS, Appellee

On Appeal from the 254th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DF-11-13821.
Opinion delivered by Justice FitzGerald.
Justices Moseley and O'Neill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee VIRGINIA VANEGAS recover her costs of this appeal from appellant CRYSTAL ANN HARRIS.

Judgment entered August 21, 2014